IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIE BOYLE f/k/a BRIAN BOYLE, | ) | |
| 1649 Cedar Rd. | ) | |
| Homewood, IL 60430 | ) | |
| | ) | |
| Plaintiff, | ) | Case No. ___21-cv-6011_____ |
| | ) | |
| v. | ) | |
| | ) | |
| STARBUCKS CORPORATION aka | ) | |
| STARBUCKS COFFEE COMPANY, | ) | |
| a Washington Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Brie Boyle, by and through counsel, and for their Complaint against Defendant Starbucks Corporation aka Starbucks Coffee Company for sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. ("Title VII"), for violations of the Americans with Disabilities Act, 42 U.S.C § 12101, et seq. ("ADA"), and for violations of the common law of Illinois, states and alleges as follows:

## PARTIES

1. Plaintiff Brie Boyle is an individual residing in the State of Illinois, at 1649 Cedar Rd., Homewood, Illinois 60430. Plaintiff was employed by Defendant as a partner (or barista) at the time they were wrongfully terminated on or about May 23, 2021.

2. Defendant Starbucks Corporation aka Starbucks Coffee Company ("Starbucks") is a for-profit corporation doing business in Illinois, and with its principal place of business in Seattle, Washington.

1

3.      During Plaintiff's employment with Defendant Starbucks, Plaintiff worked primarily from Defendant's location at 17860 Halsted Street, Illinois 60430.

4.      At all times herein mentioned, Plaintiff was a person, an individual, and an employee within the meaning of Title VII and was therefore and otherwise entitled to all the benefits and protections of Title VII, and of the common law of the State of Illinois.

5.      At all relevant times Defendant Starbucks was an employer within the meaning of Title VII and thus, Defendant Starbucks is liable to Plaintiff under Title VII.

## Jurisdiction and Venue

6.      This Court has subject-matter jurisdiction over this civil action because Plaintiff asserts claims arising under federal law. This Court also has supplemental jurisdiction over Plaintiff's Illinois common law claims as such claims are related to the federal claims over which this Court has independent jurisdiction.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in and/or conducts business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## Background Facts and Exhaustion of Administrative Remedies

8.      Plaintiff was employed by Defendant Starbucks beginning on or about September 16, 2019 as a partner (or "barista") until their wrongful termination on or around May 23, 2020.

9.      During the course of their employment with Defendant Starbucks, Plaintiff always performed at or above the standards expected of Defendant Starbucks' employees.

10.     Plaintiff met all qualifications for the position they held with Defendant Starbucks.

11.     Throughout their employment with Defendant Starbucks, Plaintiff performed all duties of their job as required, met, or exceeded the expectations of their positions, and received praise for their work.

2

12.     Plaintiff is non-binary and thirty-three (33) years old.

13.     Throughout Plaintiff's employment at Defendant Starbucks, Plaintiff was subjected to  a continuing pattern of sexual harassment and gender discrimination by their supervisor, Fernanda Garcia, Defendant Starbucks' Shift Manager.

14.     In addition, throughout Plaintiff's employment at Defendant Starbucks, Plaintiff was subjected to a continuing pattern of sexual harassment and gender discrimination by another supervisor, Katie Reimer, Defendant Starbucks' Store Manager.

15.     On or about August 5, 2020, Plaintiff timely filed a charge of sex discrimination, disability discrimination, and retaliation against Defendant Starbucks with the Equal Opportunity Commission ("EEOC").  (Attached as **Exhibit A**).

16.     On or about August 11, 2021, the EEOC issued its Notice of Right to Sue to Plaintiff. (Attached as **Exhibit B**).

17.     This lawsuit was filed within 90 days of the EEOC's issuance of its Notice of Right to Sue to Plaintiff.

18.     The charge of discrimination attached as Exhibit A provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this EEOC judicial complaint may be and is as broad as the scope of the EEOC investigation which could reasonably be expected to have grown out of the charge.

19.     Plaintiff experienced a broad-based pattern and practice of sexual harassment, gender discrimination, and  retaliation in the form of adverse employment decisions based on Plaintiff's protected activity.

20.     Plaintiff expressed their objections to this illegal and harassing treatment by Defendant, however, they continued to be subjected to Defendant's unlawful conduct in the form of a hostile work environment, hostile and harassing statements and actions, and ultimately

3

Plaintiff's wrongful termination without any legitimate, non-pretextual reason.

21.     Plaintiff also experienced a pattern and practice of disability discrimination and refusal to accommodate Plaintiff's disabilities in violation of the Americans with Disabilities Act ("ADA").

22.     At all times mentioned herein, Plaintiff's supervisors and co-workers were agents, servants, and/or employees of Defendant Starbucks; and/or were at all such times directly acting in the interests of Defendant Starbucks; and/or were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized, ratified, and condoned by Defendant Starbucks; and/or were acting as proxies/alter egos of Defendant Starbucks. Therefore, Defendant Starbucks is liable for the actions of its supervisors and employees.

23.     The true reasons for the illegal actions against Plaintiff in the terms and conditions of their employment, as described above, were illegal sex discrimination and harassment, and/or retaliation for Plaintiff's complaints of illegal treatment and/or complaints of serious violations of Missouri and federal law.

24.     The illegal actions set forth above and herein were caused, aided, abetted, directed, incited, compelled, and/or coerced by Defendant Starbucks.

**COUNT I – HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEX/GENDER STEREOTYPING/SEXUAL ORIENTATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**

25.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 24 above.

26.     Plaintiff was subjected to a hostile environment/harassment based on gender stereotyping - because Plaintiff did not conform to the traditionally held idea of demeanor and appearance for their birth gender - which was severe and/or pervasive enough to alter the

conditions of their work environment, and make it more difficult for them to do the job.

27.     Plaintiff was also subjected to a hostile environment/harassment based on sexual orientation - because Plaintiff did not conform to the traditionally held idea of sexual orientation for their birth gender - which was severe and/or pervasive enough to alter the conditions of their work environment, and make it more difficult for them to do the job.

28.     On or before November of 2019, roughly two months after starting Plaintiff's employment at Starbucks, Plaintiff informed their Starbucks co-workers and management they were in the process of transitioning from male to non-binary gender status for several months and wished to be recognized as non-binary.

29.     Also on or before November of 2019, Plaintiff's sexual orientation became known to their Starbucks co-workers and management (bisexual).

30.     From the moment information concerning Plaintiff's gender and sexual orientation became known to their co-workers and management, Plaintiff was forced to deal with insults and mistreatment nearly every time Plaintiff worked a shift between November of 2019 and May of 2020.

31.     By way of example, Fernanda Garcia, who oversaw Plaintiff as a Shift Supervisor in a supervisory or managerial capacity, used Plaintiff's legal name (male) and male pronouns to refer to them on a frequent basis.

32.     Plaintiff corrected Ms. Garcia by explicitly asking for her to use gender X pronouns (they/them/theirs or xe/xem/xyrs) and a preferred non-male name ("Brie"), when referring to them, to be consistent with Plaintiff's gender identity.

33.     However, Ms. Garcia repeatedly misgendered Plaintiff even after being asked to stop on multiple occasions.  Katie Reimer, Store Manager, also misgendered Plaintiff by using male pronouns despite being asked multiple times by Plaintiff to stop.  In addition, instead of

asking Ms. Garcia to cease the harassing and humiliating behavior, Store Manager Katie Reimer refused to intervene, and instructed Plaintiff to "hash it out" with Ms. Garcia themselves.

34.     Setting aside Store Manager Katie Reimer's support for Ms. Garcia's harassing and discriminatory behavior, when Plaintiff confronted Ms. Garcia about her conduct (as instructed by Store Manager Katie Reimer), Ms. Garcia assured Plaintiff the unlawful harassment would end.  It did not.  Instead, Ms. Garcia continued to verbally harass Plaintiff at nearly every shift they worked together between November of 2019 and May of 2020.  When Ms. Garcia's unlawful conduct continued, my client again reported the unlawful conduct to Store Manager Katie Reimer.  However, Ms. Reimer again failed to take action and Plaintiff was again instructed to "hash it out" with Ms. Garcia on their own.

35.     In addition to reporting this unlawful conduct, Plaintiff asked both Ms. Garcia and Store Manager Katie Reimer multiple times for a transfer to a different store or alternatively to simply no longer be required to work the same shifts as Ms. Garcia.  When Plaintiff attempted to escalate these complaints to Starbucks' human resources department, those attempts were stonewalled, as Ms. Garcia and Store Manager Katie Reimer instructed Plaintiff not to file formal complaints with Starbucks' Human Resources Department.

36.     These issues with Ms. Garcia came to a head on March 18th and again on May 21st of 2020.  After requesting a transfer or other accommodation multiple times and receiving no response, Plaintiff was scheduled to work a shift with Ms. Garcia on March 18th, 2020.  Early in the shift, Ms. Garcia began her usual pattern of abuse, this time making sexually-charged harassing accusations directed at Plaintiff.  When Plaintiff asked Ms. Garcia to stop and requested a transfer to a different store, she stated, "man- up," as well as "you are too sensitive."  During this altercation, her tone became threatening and loud, and Plaintiff was forced to flee the situation. Plaintiff then reached out to Katie Reimer to report the illegal discriminatory conduct, request the

accommodation of a store transfer, and remind Ms. Reimer of Plaintiff's disabilities. Plaintiff received no response from Katie Reimer.

37. Shortly after Starbucks reopened after COVID-19 lockdown, Ms. Garcia's harassment resumed on May 21, 2020. Ms. Garcia began humiliating and yelling at Plaintiff about their gender identity in front of the entire staff. During this altercation, Ms. Garcia physically pushed Plaintiff and prevented them from leaving the area to de-escalate the situation.

38. After this assault and battery took place, Plaintiff again reported the illegal discriminatory conduct and requested transfer to a different store to Store Manager Katie Reimer via telephone and text message the same day (May 21, 2020). Plaintiff's multiple requests for transfer were denied, and Plaintiff's employment was terminated by Starbucks on or around May 23, 2021.

39. The actions described above amount to discrimination based on sex, in violation of Title VII.

40. Plaintiff's sex was a motivating factor in Defendant Starbucks' intentional decision to discriminate against and harass them in the terms and conditions of their employment, including, but not limited to subjecting Plaintiff to an ongoing hostile work environment, including hostile, biased and harassing statements and actions and ultimately their wrongful termination without any legitimate reason and by refusing to address Plaintiff's complaints about sexual harassment and gender discrimination, and terminating their employment with Defendant Starbucks.

41. The true reasons for the illegal actions against Plaintiff in the terms and conditions of their employment, as described above, were illegal sex discrimination, harassment, and/or retaliation.

42. Defendant knew, or should have known, of the illegal sexual harassment and discrimination against Plaintiff.

7

43. Defendant failed to take prompt and appropriate corrective action to end the sexual harassment and discrimination against Plaintiff.

44. Defendant failed to make good faith efforts to enforce their policies to prevent sexual harassment and discrimination against their employees, including Plaintiff.

45. Defendant discriminated against Plaintiff in the terms and conditions of their employment because of their sex as set forth above, including by taking no appropriate action to remedy its illegal conduct, and by terminating their employment for false alleged reasons.

46. As a direct and proximate result of Defendant's illegal sexual harassment and discrimination, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to their reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

47. Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under Title VII, thus justifying an award of punitive damages in an amount sufficient to punish Defendant Starbucks and to deter it from like conduct in the future.

48. Plaintiff has already incurred and will incur in the future substantial attorneys' fees and expenses in prosecuting this action, and such fees and expenses are recoverable from Defendants under Title VII.

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendant on Count I, and requests an award of their actual damages, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), including but not limited to their lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental

8

anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, front pay, and an injunction restraining Defendant Starbucks from future discriminatory actions, and any such other relief as the Court deems just and proper.

<u>**COUNT II – RETALIATION IN VIOLATION OF TITLE VII**</u>

49.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 48 above.

50.    Plaintiff had a good faith, reasonable belief that Defendant was engaging in unlawful employment practices, including violations of laws prohibiting discrimination and sexual harassment, and they reported their concerns and opposition to these unlawful practices to Defendant.

51.    Plaintiff engaged in a protected activity by complaining to Defendant about and reporting the illegal activity directed towards them, including Ms. Garcia's unlawful harassing statements and actions, and was retaliated against in the terms and conditions of their employment because of their sex and complaints.

52.    Defendant retaliated against Plaintiff in the terms and conditions of their employment because of their reports of and/or opposition to unlawful employment practices, including but not limited to, taking no appropriate action to remedy the illegal conduct and by terminating Plaintiff's employment for false alleged reasons.

53.    Plaintiff expressed their objections to this illegal, discriminatory, and harassing treatment by Defendant; however, they continued to be subjected to discriminatory and harassing

treatment in the form of a hostile work environment, including hostile, discriminatory, and harassing statements and actions and ultimately their wrongful termination without any legitimate reason.

54.     Plaintiff's opposition to Defendant's unlawful employment practices was a motivating factor in Defendant's decision to retaliate against them in the terms and conditions of their employment including but not limited to their wrongful termination.

55.     The illegal actions set forth above and herein were caused, aided, abetted, directed, incited, compelled, and/or coerced by Defendant Starbucks due to sex discrimination and/or in  retaliation for Plaintiff's lodging of complaints of illegal treatment.

56.     As a direct and proximate result of Defendant's illegal retaliatory actions, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

57.     Defendant failed to make good faith efforts to enforce their policies to prevent harassment, discrimination and retaliation against its employees, including Plaintiff.

58.     Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under Title VII, thus justifying an award of punitive damages in an amount sufficient to punish Defendant Starbucks and to deter it from  like conduct in the future.

59.     Plaintiff has already incurred and will incur in the future substantial attorneys' fees and expenses in prosecuting this action, and such fees and expenses are recoverable from Defendant under Title VII.

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendant on Count

II, and requests an award of their actual damages, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to their lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, front pay, and an injunction restraining Defendant from future discriminatory and retaliatory actions, and any such other relief as the Court deems just and proper.

## COUNT III – HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON DISABILITY IN VIOLATION OF THE ADA

60.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 59 above.

61.     Plaintiff is covered under the Americans with Disabilities Act ("ADA"), as amended.

62.     Plaintiff has an actual physical impairment in that Doe has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

63.     Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Doe's brain neuroanatomy was formed in the womb before birth resulting in Doe's anatomical sex not corresponding with Plaintiff's gender identity.

64.     Plaintiff was perceived or regarded by Defendant as disabled in that Defendant stereotyped Plaintiff as having a mental impairment, mental infirmity, and/or not being able to properly think. However, being transgender is *not* a mental disorder.

11

65.     Any exclusion of persons who are transgender from the ADA is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

66.     Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

67.     Furthermore, on information and belief, Plaintiff has been diagnosed with depressive disorder ("DD") and post-traumatic stress disorder ("PTSD").  DD and PTSD substantially limit the major life activities of interacting with others, social functioning, and reproducing.  Plaintiff therefore has a covered disability under the ADA.

68.     Plaintiff can perform the job they held with or without reasonable accommodation.

69.     Defendants discharged/terminated Doe on account of Plaintiff's disability.

70.     Defendant had sufficient knowledge or awareness of Plaintiff's disabilities. Plaintiff disclosed their disabilities (DD and GD) to Starbucks on multiple occasions – at least when hired in 2019, in March of 2020, and in May of 2020.  Plaintiff also made it clear to Katie Reimer in May of 2021 that they suffer from PTSD when requesting a store transfer.  Plaintiff made it clear to Ms. Reimer that such a transfer would get Plaintiff out of harm's way, end the illegal discriminatory conduct toward Plaintiff, and provide a reasonable accommodation for their disabilities of DD, GD, and/or PTSD.

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendant on Count III, and requests an award of their actual damages, including but not limited to their lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem,

humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, front pay, and an injunction restraining Defendant from future discriminatory and retaliatory actions, and any such other relief as the Court deems just and proper.

## COUNT IV – FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE ADA

71.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 70 above.

72.     Plaintiff is covered under the Americans with Disabilities Act ("ADA"), as amended.

73.     Plaintiff has an actual physical impairment in that Doe has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

74.     Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Doe's brain neuroanatomy was formed in the womb before birth resulting in Doe's anatomical sex not corresponding with Plaintiff's gender identity.

75.     Plaintiff was perceived or regarded by Defendant as disabled in that Defendant stereotyped Plaintiff as having a mental impairment, mental infirmity, and/or not being able to properly think.  However, being transgender is *not* a mental disorder.

76.     Any exclusion of persons who are transgender from the ADA is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

77.     Alternatively, upon information and belief, Plaintiff has an actual physical and/or

mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

78.     Furthermore, on information and belief, Plaintiff has been diagnosed with depressive disorder ("DD") and post-traumatic stress disorder ("PTSD").  DD and PTSD substantially limit the major life activities of interacting with others, social functioning, and reproducing.  Plaintiff therefore has a covered disability under the ADA.

79.     Plaintiff can perform the job they held with or without reasonable accommodation.

80.     Defendant had sufficient knowledge or awareness of Plaintiff's disabilities. Plaintiff disclosed their disabilities (DD and GD) to Starbucks on multiple occasions – at least when hired in 2019, in March of 2020, and in May of 2020.  Plaintiff also made it clear to Katie Reimer in May of 2021 that they suffer from PTSD when requesting a store transfer.

81.     Plaintiff made it clear to Ms. Reimer that such a transfer would get Plaintiff out of harm's way, end the illegal discriminatory conduct toward Plaintiff, and provide a reasonable accommodation for their disabilities of DD, GD, and/or PTSD.  Defendant failed to make the requested reasonable accommodation in violation of the ADA.

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendant on Count IV, and requests an award of their actual damages, including but not limited to their lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, front pay, and an injunction restraining Defendant from future discriminatory and retaliatory actions, and any such other relief as the Court deems just and proper.

14

## COUNT V – ASSAULT AND BATTERY

82.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 81 above.

83.    By continuing to subject Plaintiff to an ongoing pattern of sexual harassment and discrimination after Plaintiff repeatedly complained about such conduct and requested that such conduct cease, Defendants knew or should have known it was creating an unreasonable risk of causing Plaintiff emotional distress and putting Plaintiff in physical danger while at work.

84.    Shortly after Starbucks reopened after COVID-19 lockdown, Fernanda Garcia resumed her harassment of Plaintiff on May 21, 2020. Ms. Garcia began humiliating and yelling at Plaintiff about their gender identity in front of the entire staff. During this altercation, Ms. Garcia physically pushed Plaintiff and prevented them from leaving the area to de-escalate the situation.

85.    This was an intentional act by Ms. Garcia, directed toward Plaintiff, that caused Plaintiff reasonable apprehension of an imminent, offensive contact with the Plaintiff's person. It resulted in the willful touching of another person (Plaintiff). Defendant's conduct was willful and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff.

86.    As a direct and proximate result of the actions of Defendant, Plaintiff has suffered damage and severe emotional distress that resulted in bodily harm, including but not limited to, depression, loss of concentration and sleep, and anxiety.

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendant on Count V, and requests an award of their actual damages, including but not limited to damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, punitive damages,

all costs including reasonable attorneys' fees, equitable relief as appropriate, and any such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in the in the United States District Court for the Northern District of Illinois on all counts and allegations in this Complaint.

Respectfully submitted,

**OLDAKER LAW PC**

*/s/ Joseph P. Oldaker*
Joseph P. Oldaker, IL Bar # 6295319
1339 East Lyn Ct.
Homewood, IL 60430
(T) 312.957.4230
Joseph@Oldakerlaw.com

***Attorney for Plaintiff Brie Boyle***